**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **FRANCES AGNEW, COLSON AGNEW, SHOP ORC, LLC, and JEFFREY MOORE,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**BLUEVINE, INC., PATAGONIA, INC., JPMORGAN CHASE BANK, N.A., and VERSO LAW GROUP LLP,**<br><br>**Defendants.** | Civ. No. 2:26-cv-04144 (WJM)<br><br>**OPINION** |

In this action for violations of the Fair Debt Collection Practices Act ("FDCPA"), the New Jersey Consumer Fraud Act, and state law conversion, Defendants Patagonia, Inc. ("Patagonia") and Verso Law Group LLP ("Verso") move to: 1) dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2); 2) to dismiss the Amended Complaint ("AC") pursuant to Rule 12(b)(6) and for an award of attorneys' fees pursuant to New Jersey's Uniform Public Expression Protection Act ("UPEPA"), N.J.S.A. § 2A:53A-49, *et seq.*; or 3) alternatively, to transfer venue under 28 U.S.C. § 1404(a) to the Central District of California. ECF No. 40. Plaintiffs Frances Agnew ("F. Agnew"), Colson Agnew ("C. Agnew"), Shop ORC, LLC ("Shop ORC"), and Jeffrey Moore ("Moore") (together "Plaintiffs") move for leave to file a sur-reply to Patagonia and Verso's motion. ECF No. 48. Defendant JPMorgan Chase Bank, N.A. ("Chase") also moves to transfer venue to the Central District of California pursuant to 28 U.S.C. § 1404(a) or alternatively, to dismiss pursuant to Rule 12(b)(6). ECF No. 49. The Court decides the matter without oral argument. Fed. R. Civ. P. 78(b). For the reasons below, Patagonia, Verso, and Chase's (together "Defendants") motions to transfer venue are **granted**. The remaining motions are **denied as moot**.

## I. BACKGROUND

### A. The Parties

F. Agnew and C. Agnew reside in Florida. AC ¶¶ 9-10, ECF No. 32. C. Agnew is one of the owners of Shop ORC, which is organized and has its principal place of business in Florida. *Id.* ¶¶ 9-11. Patagonia is a California corporation with a principal place of business in California. *Id.* ¶ 7. Verso is a law firm with its principal place of business in

California. *Id.* ¶ 8. Chase is an international bank with headquarters in New York and branch offices in New Jersey. *Id.* ¶ 6. Bluevine, Inc. ("Bluevine") is an online bank headquartered in New Jersey that has since been dismissed from the action with prejudice. *Id.* ¶ 5; Stip. of Dismissal, ECF No. 35. Plaintiffs in this case ("NJ Action") are among the defendants being sued in a trademark infringement and counterfeiting action pending in the District Court for Central District of California, *Patagonia v. Frances Agnew, et al.*, 25-03283 ("CA Action").

B. <u>District Court of the Central District of California Action</u>

On April 15, 2025, Patagonia, represented by its litigation counsel, Verso, instituted the CA Action, and also filed an *ex parte* application for a TRO to enjoin Plaintiffs and the other defendants from using and selling counterfeit products displaying Patagonia's trademarks. The initial TRO application was denied without prejudice, but on May 7, 2025, Patagonia's renewed TRO application was granted. The TRO prohibited Plaintiffs from "moving, transferring, withdrawing, or paying any funds" or "directing any activities" within "any accounts held at banks or other financial institutions that were used in connection with" any e-commerce shopping sites identified in the TRO. CA Action TRO ¶¶ 4-5, ECF No. 23. Subsequently, Patagonia applied to extend the TRO to new third-party institutions, but that application was denied on May 13, 2025 in part due to insufficient information on the record "that the newly-identified assets that Patagonia [sought] to freeze are connected with Defendants' alleged counterfeiting of Patagonia's marks." CA Action May 13, 2025 Order ("Minute Order"), ECF No. 26.

The next day, Verso sent a letter to Chase's New York office stating in pertinent part that a TRO had been issued on May 7, 2025 by the District Court in the Central District of California requiring the defendants in that action (which included Plaintiffs) "to refrain from withdrawing or accessing any funds that had been received from operation of the identified activities." AC ¶ 32, Ex. 1. The letter also explained that "[t]he Court has not entered any order specifically requiring JP Morgan Chase to take any action," but "request[ed] that JP Morgan Chase take steps to ensure that Defendants [in the CA Action] do not violate the [TRO.]" *Id.* A similar letter was sent to Bluevine. *Id.* ¶¶ 5, 40. Thereafter, Verso, Chase Bank, and Bluevine confiscated or restrained Plaintiffs' assets with a total value of about $1,000,000 on behalf of Patagonia. *Id.* ¶ 36. Plaintiffs claim that only two of the frozen accounts had any relation to the online business of F. Agnew or Shop ORC accounts and that "[a]s part of Verso and Patagonia's litigation strategy in Central District of California, they attempted to personally bankrupt Plaintiffs." *Id.* ¶¶ 38, 45.

On June 5, 2025, the California District Court found that Patagonia had demonstrated a likelihood of dissipation of the proceeds from the sale of counterfeit Patagonia products and issued a preliminary injunction order, which among other things, extended the relief afforded in the TRO until the final disposition of the case. CA Action Prelim. Injunction Order, ECF No. 75.

On July 14, 2025, Plaintiffs moved to dismiss the CA Action for lack of personal jurisdiction, for improper venue, and for failure to state a claim. CA Action Mot. to Dismiss, ECF No. 100. That motion remains pending. Nearly a year later, on July 16, 2026, Plaintiffs filed a "Motion for Relief from Frozen Accounts and Personal Assets At Third-Party Financial Institutions." CA Action Mot. for Relief, ECF No. 179. Plaintiffs argued that Chase and Bluevine froze their banking accounts and other assets in violation of the May 13, 2025 Minute Order, calling them "judgment debtors." *Id.* at 3. In response, Patagonia claimed that it had only notified the banks of the court's orders and advised them that the court had not directed the banks themselves to take any action, that Plaintiffs mischaracterized the May 13 Minute Order as exempting all accounts held by Chase or Bluevine from the TRO and preliminary injunction, and that the freezing of accounts fell within the scope of the Preliminary Injunction. Patagonia Opp'n to Mot for Relief, CA Action ECF No. 180. That motion is also still pending.

C. <u>District Court of New Jersey Action</u>

Plaintiffs initiated this NJ Action on April 19, 2026, filing a 16-count complaint against Patagonia, Verso, Chase, and Bluevine. Plaintiffs seek damages for the alleged illegal confiscation and freezing of their personal and business bank accounts and other assets at Bluevine and at Chase. *See generally* AC, ECF No. 1. Plaintiffs contend, *inter alia*, that no asset freeze was ordered in the CA Action, that the asset freeze was in violation of the orders entered in that action, and that Defendants fraudulently referred to Plaintiffs as judgment debtors. *See, e.g., id.* ¶¶ 30, 37, 48, 50. Plaintiffs plead New Jersey statutory and common law fraud, conversion, theft, breach of the covenant of good faith and fair dealing, negligence, abuse of process, constitutional violations, and six FDCPA claims against Verso and/or Chase as "debt collectors."

Currently before this Court is Patagonia and Verso's motion to dismiss for lack of personal jurisdiction, for failure to state a claim and for an award of attorneys' fees pursuant to the UPEPA, or alternatively, to transfer this matter to the Central District of California. Chase also seeks the transfer or dismissal of this action. Plaintiffs oppose the motion and request leave to amend any deficiencies or that any transfer be to the Middle District of Florida.[1] The Court concludes that transfer to the Central District of California is appropriate under § 1404(a) and thus does not reach the merits of the remaining motions.

---

[1] Plaintiffs' briefs do not include a table of contents and a table of authorities in violation of Local Civil Rule 7.2(b). Additionally, Local Rule 7.2(d) requires footnotes to be "printed in the same size of type utilized in the text." Plaintiffs' footnotes appear to be in a 9-point font, significantly smaller than the font used in the text. Apart from failing to comply with the Local Rules, 9-point font is uncomfortably small to read. Plaintiffs are reminded that briefing on any subsequent motions in any venue must adhere to all applicable federal and local court rules.

## II. DISCUSSION

### A. Motion to Transfer Under 28 U.S.C. §1404(a)

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The district court has wide discretion in this decision. *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756 (3d Cir.1973). "In deciding a § 1404(a) motion, a court is not limited to the pleadings, and may consider affidavits and other evidence." *Roller v. Red Payments L.L.C.*, No. 18-1834, 2019 WL 3802031, at *4 (E.D. Pa. Aug. 12, 2019); *see also Plum Tree,* 488 F.2d at 756-57. The party seeking the transfer usually bears the burden of persuasion. *See In re McGraw-Hill Global Educ. Holdings LLC,* 909 F.3d 48, 57 (3d Cir. 2018).

#### *1. Private and Public Interest Factors*

Typically, a court balances "the three enumerated factors in §1404(a) (convenience of the parties, convenience of the witnesses, or interests of justice)" along with a non-exhaustive list of various private and public interest factors. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). Private interest factors include: plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum). *Id.* at 879. Public interest factors have included: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases. *Id.* at 879-880.

Here, the balance of *Jumara* private interest factors tip strongly in favor of transfer. A plaintiff's choice of forum is afforded less weight "where the plaintiff has not chosen a home forum" or "the choice of forum by a plaintiff has little connection with the operative facts of the lawsuit." *Liggett Grp. Inc. v. R.J. Reynolds Tobacco Co.,* 102 F. Supp. 2d 518, 530 (D.N.J. 2000) (citation modified). In this case, New Jersey is neither Plaintiffs' home forum nor where the central facts of this lawsuit occurred. Patagonia and Verso acted (whether appropriately or wrongfully) pursuant to an injunctive order issued by a California court. Moreover, while Plaintiffs allege that a "substantial part of their assets" were seized at Bluevine's New Jersey headquarters, *see* Pls. Opp'n to Patagonia and Verso at 11, 16, ECF No. 44, Bluevine's conduct is not at issue in this action as it is no longer a

party. Next, although Plaintiffs assert that Chase has "many bank branches" in this State, they do not claim that they maintained their accounts at any of those New Jersey branches, that Chase took any actions related to Plaintiffs' accounts in New Jersey, or that the New Jersey branch offices were involved in any way. Thus, New Jersey has no meaningful connection to the operative facts of this lawsuit. As for convenience of the parties, Plaintiffs are already being sued in California and there is no indication that witnesses and records are unavailable for trial in one of the fora. Nor is there credible basis to conclude that the convenience of the witnesses or the location of books and records weigh in favor of proceeding in a venue where Plaintiffs do not reside and where none of the central facts in this case occurred.

Rather, the crux of the issue in this NJ Action – whether the freezing of assets was improper – is inextricably tied to the first filed CA Action and interpretation of the rulings in that matter. *See* Pls. Local Civil Rule 11.2 Cert. ("The present action concerns subsequent conduct arising from the alleged misinterpretation, misuse of [the CA Action] Temporary Restraining Order."), ECF No. 52. According to Plaintiffs, Defendants engaged in unlawful conduct beyond the scope of the TRO. *See* Pls. Opp'n to Patagonia and Verso, at 13-14. *See, e.g.,* AC ¶ 130 (alleging Chase acted to help Patagonia and Verso "prolong the litigation in California by freezing all the assets of the Plaintiffs so as to deprive them any means of defenses in the California case."). Patagonia and Verso deny wrongdoing contending that their May 14, 2025 letter served simply to notify Chase's New York office of the May 7, 2025 TRO and to request that Chase take steps to ensure that the CA Defendants do not violate the TRO. AC, Ex. 1. This dispute over whether freezing of the accounts was a proper implementation of the TRO or constituted theft is also already the subject of Plaintiffs' motion for emergency relief from the frozen accounts, which remains pending in the CA Action. In short, Plaintiffs have already sought relief in the CA Action.

Moreover, an adjudication of whether Defendants engaged in wrongful theft, conversion, or confiscation would require this Court to determine the scope of the California court's injunction, which could lead to inconsistent results. *See* Pls. Opp'n to Chase, at 10 (noting "[t]his action concerns Chase's own response to Verso's request" including "whether the restrictions matched the scope of the [California court] orders"). The Central District of California, having issued the orders at issue, is better positioned to interpret and apply its own order than this Court. *See Perno v. Chrysler Grp., LLC,* No. 10-5100, 2011 WL 868899, at *4 (D.N.J. Mar. 10, 2011) ("Allowing for different courts in different jurisdictions to interpret the terms of [an order] creates the possibility for inconsistent determinations, inconsistent liability to the Defendant, and needless confusion.").

Finally, New Jersey has no local interest in adjudicating this dispute between Florida residents and Chase, a national banking association headquartered in New York with its main office in Ohio, over an order issued in California. It would not be in the public interest to impose jury duty "upon the people of a community which have no relation to the

litigation." *Liggett*, 102 F. Supp. 2d at 536. The interests of justice would be better served by this lawsuit proceeding before the same court in which the CA Action is already pending, and which involves many of the same parties on the same issues. *Id.* at 537.

2. *District Where Action Might Have Been Brought*

A transferee court must have personal jurisdiction over all the defendants to be a district where an action "might have been brought." 28 U.S.C. § 1404(a); *see Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir. 1970). Defendants Patagonia, Verso, and Chase do not dispute that they are subject to personal jurisdiction in California.[2] However, Plaintiffs insist that they are not subject to personal jurisdiction in California and that granting transfer would be a "collateral attack" on their motion to dismiss for lack of personal jurisdiction pending in the CA Action and "force" them to waive their jurisdictional objections and accept personal jurisdiction in California. Pls. Opp'n to Patagonia and Verso, at 34; Pls. Opp'n to Chase, at 12-13, ECF No. 51. Plaintiffs offer no legal or factual support for this contention. Moreover, this Court makes *no* determination as to whether *Plaintiffs* are subject to personal jurisdiction in California. To be clear, this § 1404(a) decision is not to be construed as an implicit "attack" on the motion to dismiss pending in the CA Action.[3] Plaintiffs have not waived personal jurisdiction and are not precluded from pressing their jurisdictional challenges in the California District Court. *See, e.g., Ragner Tech. Corp. v. Berardi,* 287 F. Supp. 3d 541, 548–49 (D.N.J. 2018) (finding that the defendants did not waive their objections to personal jurisdiction in the New Jersey transferee court because they contested that issue before the Florida transferor court which acknowledged that the defendants "may attempt to challenge personal jurisdiction in the

---

[2] Patagonia and Verso are California companies. Chase consents to jurisdiction in California by moving to transfer this action there. *See Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 138 (2023) ("'[E]xpress or implied consent" can continue to ground personal jurisdiction—and consent may be manifested in various ways by word or deed."); *see, e.g., ECB USA, Inc. v. Savencia, S.A.*, No. 19-731, 2020 WL 11762200, at *7 (D. Del. July 10, 2020), *report and recommendation adopted,* No. 19-731, 2020 WL 5369076 (D. Del. Sept. 8, 2020) (finding implied consent to personal jurisdiction in the transferee forum where the defendant voluntarily joined in a § 1404(a) motion to transfer).

[3] Even if the decision to transfer is construed as an implicit conclusion that California has personal jurisdiction over Plaintiffs, the transferee court has the authority to revisit a law of the case. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) ("[E]ven if the Seventh Circuit's decision was law of the case, the Federal Circuit did not exceed its power in revisiting the jurisdictional issue, and once it concluded that the prior decision was 'clearly wrong' it was obliged to decline jurisdiction."); *Arizona v. California,* 460 U.S. 605, 619, n.8 (1983), *decision supplemented*, 466 U.S. 144 (1984) ("Under law of the case doctrine, …, it is not improper for a court to depart from a prior holding if convinced that it is clearly erroneous and would work a manifest injustice.").

District of New Jersey."); *Kaplan v. Mashinsky*, No. 22-4560, 2025 WL 3677607, at *6 (D.N.J. Dec. 18, 2025) (holding that the defendant preserved its right to assert lack of personal jurisdiction in the transferee district court by specifically asserting in the transferor court that it was not waiving that defense); *Truinject Corp. v. Nestle Skin Health, S.A.*, No. 19-592, 2019 WL 6828984, at *6 (D. Del. Dec. 13, 2019) (ruling that the Delaware transferee court lacked personal jurisdiction over the defendant after the California transferor court declined to address the motion to dismiss for lack of personal jurisdiction noting it was "reserved for the transferee court.").

If transfer is granted, Plaintiffs insist that Florida is the appropriate venue. However, transfer to Florida would ignore the interests of justice and the promoting of judicial economy analysis discussed above relating specifically to the transfer of this action to the Central District of California. Moreover, Plaintiffs concede that the present record does not indicate whether Defendants are each subject to personal jurisdiction in Florida. While Plaintiffs ask for an opportunity to address the venue and jurisdiction issue in this Court, *see* Pls. Opp'n to Chase, at 13, those are issues to be addressed by the Central District of California where jurisdictional issues are already pending in a matter involving the same issues and parties. Transfer to the venue where the related claims were first filed promotes judicial economy, avoids inconsistent rulings concerning the meaning and effect of the California court's own orders, and permits the court most familiar with the underlying proceedings to adjudicate Plaintiffs' related claims. Accordingly, the interests of justice strongly favor transfer to the Central District of California.

B. <u>Remaining Motions</u>

Given that transfer of this action to the Central District of California is appropriate under § 1404(a), the remaining motions are **denied as moot.**

## III. CONCLUSION

For the reasons discussed above, Defendants' motion to transfer this action to the United States District Court for the Central District of California is **granted**. An appropriate Order follows.

**WILLIAM J. MARTINI, U.S.D.J.**

Date: 10/1/2026